Cheshire,
Sept. 3, 1940. } No. 3188.

THOMAS A. CALDWELL

*v.*

GEORGIE W. YEATMAN and ALFRED S. DESPRES.

BERNARD C. CALDWELL *v.* SAME.

*Walter H. Gentsch* and *Robert W. Upton* (*Mr. Upton* orally), for the plaintiffs.

*Faulkner & Bell* and *Gardner C. Turner* (*Mr. Turner* orally), for the defendants.

WOODBURY, J.   As early as 1827 Chief Justice *Richardson* speaking for this court announced it was well settled as a rule of policy in this state that "jurors are not to be received to testify to the motives

and inducements on which they may have joined in a verdict . . . .
Nor can the affidavits of all the jurors be received to correct a mistake in the verdict." *Tyler* v. *Stevens*, 4 N. H. 116, 117. Six years
later in the case of *State* v. *Hascall*, 6 N. H. 352, 361, an exception
(see *Hearn* v. *Railroad*, 67 N. H. 320, 323), to this general rule was
formulated which permitted the use of affidavits of jurors to sustain
a verdict after it had been attacked by competent evidence of misconduct on the part of one or more members of the jury. So, in 1843
in the case of *Tenney* v. *Evans*, 13 N. H. 462, 464, this court, referring
to the two earlier New Hampshire cases cited above, said that the
affidavits of jurors "could not be received to show that they misapprehended the instructions of the court, nor, where there is evidence
of improper conduct by the jury or the prosecutor relating to the
trial, to prove in general terms that their verdict was founded upon
nothing but the law and the evidence." The court then added,
citing cases from other jurisdictions as authority, "Nor to impeach
the verdict, or prove a mistake, or any improper conduct by themselves." The opinion then proceeds in the following language.
"But where evidence has been introduced *aliunde* to impeach the
verdict, by showing improper conduct of the jury, or attempts upon
them by a party, the affidavits of jurors have been received in exculpation of themselves, and in support of the verdict. And for this
there are substantial reasons. The motives and characters of jurors,
who are bound by their oaths and consciences to a strict impartiality,
and who perform so important a part in our jurisprudence, should
not be assailed without giving them an opportunity for defence.
'To exclude the testimony of jurors,' as was said by *Parker*, C. J. in
the *State* v. *Hascall*, 6 N. H. 361, 'in all questions affecting their verdict, would neither be just to the parties nor to the jury.' " Later,
in the case of *Leighton* v. *Sargent*, 31 N. H. 119, 137, the rule was
succinctly stated by the court in the following language: "It is now
fully settled, in this State, that the affidavit of a juror is admissible
in exculpation of himself, and to sustain a verdict, but when it relates to what took place after the jury had retired, is wholly incompetent to impeach it." In addition to the cases already noted, this
rule has been applied many times and the policy upon which it rests
frequently re-examined since 1827, but neither it nor its basic policy
appears ever to have been questioned. *State* v. *Howard*, 17 N. H.
171, 186; *State* v. *Ayer*, 23 N. H. 301, 320; *Folsom* v. *Brawn*, 25 N. H.
114, 123; *Goodwin* v. *Milton*, 25 N. H. 458, 472; *Walker* v. *Kennison*,
34 N. H. 257, 260; *Petition of Groton*, 43 N. H. 91, 94; *Smith* v. *Smith*,

50 N. H. 212, 219; *Knight* v. *Epsom*, 62 N. H. 356; *Clark* v. *Manchester*, 64 N. H. 471; *Palmer* v. *State*, 65 N. H. 221; *Mason* v. *Knox*, 66 N. H. 545; *Maxfield* v. *Pittsfield*, 67 N. H. 104; *Hearn* v. *Railroad*, 67 N. H. 320; *Goodwin* v. *Blanchard*, 73 N. H. 550; *Winslow* v. *Smith*, 74 N. H. 65, 70; *Boston & Maine Railroad* v. *State*, 76 N. H. 86, 91; *Blodgett* v. *Park*, 76 N. H. 435. From these authorities, and since it is obvious that "If the testimony of a juror is not admissible to impeach the verdict, evidence of his declarations cannot be received for that purpose," (*Palmer* v. *State*, 65 N. H. 221, 222; see also *State* v. *Ayer*, 23 N. H. 301), it follows that the defendants' motions, in so far as they request the setting aside of the verdicts for improper conduct of the jurors, were quite properly denied for lack of any competent supporting evidence.

A different question is presented by the motions in so far as they request that the jury be recalled and interrogated concerning their conduct while considering the case. "If the affidavits offered by the plaintiff, [the affidavits under consideration in the case from which this quotation is taken were those of a juror and of one to whom the juror had confided], . . . to sustain his motion were not competent testimony, as it seems they were not, . . . it appears . . . that the law furnished other adequate means for ascertaining whether the question submitted to the jury was misconstrued by them and whether their verdict was rendered erroneous thereby. The court could have called the jury together and inquired of them how they construed the question." *Winslow* v. *Smith*, 74 N. H. 65, 70.

This rule appears to have been first announced in this state in 1842 in the following language: "We are not disposed to doubt that the court may inquire of the jury touching their verdict and the grounds upon which they proceeded, for the purpose of ascertaining whether the case has been properly tried." *Walker* v. *Sawyer*, 13 N. H. 191. It has since been frequently reaffirmed. *Smith* v. *Powers*, 15 N. H. 546, 563; *Clough* v. *Clough*, 26 N. H. 24, 32; *Dearborn* v. *Newhall*, 63 N. H. 301; *Norris* v. *Haverhill*, 65 N. H. 89; *Jenness* v. *Jones*, 68 N. H. 475; *Goodwin* v. *Blanchard*, 73 N. H. 550; *Winslow* v. *Smith*, 74 N. H. 65; *Curtis* v. *Car Works*, 74 N. H. 600; *State* v. *Frazier*, 74 N. H. 112; *Whiting* v. *Sussman*, 78 N. H. 486; *Tierney* v. *Granite Works*, 79 N. H. 166; *Zebnik* v. *Rozmus*, 81 N. H. 45.

The foregoing authorities establish that neither party has "the legal right to bring the jurors . . . before the trial judge and have them orally examined," (*Goodwin* v. *Blanchard*, 73 N. H. 550), but that whether or not in any particular case of alleged misconduct

on their part they shall be brought in for such examination presents an issue of fact for the court below (*Dearborn* v. *Newhall*, 63 N. H. 301), which, like other similar issues, is reviewable here only for abuse of discretion. *Clark* v. *Manchester*, 64 N. H. 471; *Curtis* v. *Car Works*, 74 N. H. 600. And, under familiar principles, when a general finding has been made by the court below with respect to such an issue, as was done in the case at bar, that finding "includes a finding of all the special facts necessary to sustain it." *Welch Company* v. *State*, 89 N. H. 428, 439, and cases cited. The above authorities also establish that the exercise of this power to recall and interrogate the jury does not depend upon the introduction before the court of legally competent evidence of their misconduct. See particularly *Blodgett* v. *Park*, 76 N. H. 435. This power to recall and interrogate is one of the general supervisory powers of the court over the product of the jury which may be exercised by the court, if justice requires, (*Curtis* v. *Car Works*, 74 N. H. 600), whenever he is of the opinion that the jury may have made some mistake or been guilty of some improper conduct which produced their verdict. The question before us, then, on this part of the defendant's motions, is not whether the evidence in support thereof is legally admissible, but whether the suggestions of the jury's misconduct made to the court below by counsel for the defendants are so persuasive that the court abused his discretionary power when he declined to sift the matter further by recalling the jurors and subjecting them to oral examination.

The unofficial visit of one, or even of all, of the jurors to the scene of the event on trial before them is not misconduct of such a nature as to require an order for a new trial as a matter of law even in a capital case (*Palmer* v. *State*, 65 N. H. 221), and the fact that in the case at bar the juror who visited the scene corroborated by measurement a distance testified to by one of the plaintiffs' witnesses is of trifling importance. This juror's measurement of distance introduced no new evidence into the case and it related to a matter not in dispute between the parties. The argument that since it corroborated a witness for the plaintiff, even upon a matter not disputed, it prejudiced the defendant because of its tendency to enhance the value of the other testimony of this witness as to matters which were in dispute is too tenuous to call for discussion.

The evidence presented to the court that this juror also made experiments with the headlights of his car at the scene of the accident is far from conclusive. Counsel for the defendants with commendable candor admit that he denied having done any such thing,

but say only that he said he must have done so if another juror, (the only one found who would say that he heard anything about such an experiment), said that he had reported thereon.

The fact that during the trial another juror was given unsolicited information out of court by a friend as to an issue in dispute between the parties does not constitute misconduct sufficient to warrant an order for a new trial as a matter of law.   State v. Ayer, 23 N. H. 301; Maxfield v. Pittsfield, 67 N. H. 104.

Furthermore "The matter in issue in a proceeding of this kind is whether the juror's misconduct produced the verdict, and not whether he misbehaved during the trial," (Blodgett v. Park, 76 N. H. 435, 438), and it does not appear that anything was shown to the court below to indicate that the alleged instances of misbehavior on the part of certain of the jurors produced their unanimous verdicts.

From this lack of indication of any effect of the individual acts of misconduct upon the jury as a whole; from the fact that none of the alleged instances of misconduct on the part of any of the jurors are sufficient to warrant an order for a new trial as a matter of law; from the conflicting reports given by the jurors to counsel for the defendant and by the latter reported to the court; and from the likelihood that the jurors when interviewed informally after they had been discharged and had separated may have made ill-considered statements to counsel, we are of the opinion, in view of the policy of the law to discourage any discussion of cases by defeated counsel with jurors after trial, that the court below can not be found to have abused his discretion when he denied the defendants' motions to have the jury recalled and interrogated.   In our opinion a contrary holding would constitute a serious encroachment by this court upon the discretionary powers of the trial court which would seriously hamper the latter in its administration of justice.

There only remains to be considered the defendants' allegation that the provisions of Public Laws chapter 339, section 25, had not been complied with.   This statute reads as follows: "Jurors shall not be required to continue their deliberations without sleep and rest later than twelve o'clock in the evening.   At that hour, or earlier, under such safeguards and conditions as the court may direct, they shall be afforded suitable opportunity for sleep and rest, at the expense of the county, for at least eight hours before again taking up their deliberations."   It appears that the jury were told to cease their deliberations before midnight and that they did not again take up their consideration of the cases until more than eight hours later,

and it appears that they knew that sleeping accommodations were provided for their use and available to them. These facts distinguish the case at bar from the case of *Kellogg* v. *Eastman*, 86 N. H. 37, upon which the defendants rely. No violation of the provisions of the above statute is indicated by showing that the jurors, or some of them, chose not to use the accommodations provided but instead to engage in noisy play. It is no part of the function of the court or sheriff to supervise the slumber of jurors when detained over-night by their duties. The only question presented is whether or not they were "afforded suitable opportunity for sleep and rest," and this is one of fact for the court below. Full opportunity to investigate this question is readily available to that court. What investigation he may have made in the case at bar does not appear, but from his general order denying the defendants' motions we assume that he made inquiry and examination and from it concluded that the accommodations afforded by the county complied with the statutory requirements.

*Exceptions overruled.*

ALLEN, C. J., dissented: the others concurred.